JOHNSON, Judge.
The defendant has appealed from a judgment of the Civil District Court for the Parish of Orleans, granting to plaintiff a separation a mensa et thoro with custody of two minor children, subject to rights of visitation by defendant, ordering an injunction to prevent both parties from disposing of community property and awarding plaintiff $30.00 per month for the support of the children. The Court also dismissed defendant’s reconventional demand for a judgment of separation in his favor.
The evidence in the case is not at all one-sided, but after a careful review of the record we are convinced that a fair preponderance of the evidence is in favor of the plaintiff. It is apparent that the trial Judge very patiently gave both parties wide range to air their grievances and complaints, one against the other, and he correctly resolved the dispute in favor of the plaintiff. There are many charges and counter-accusations and incriminations evidencing irritating difficulties which each party claims are sufficient to render their continued living together insupportable, and which we find are mainly brought about by defendant’s unwillingness to maintain steady employment to properly support the family, all of which naturally led to bickering and violence which did not terminate when defendant moved, with their children, from their domicile and barricaded their home, while plaintiff was at work, by nailing the windows shut and two by fours across the doors on the inside. The 244 pages of testimony reveals an unfortunate example of a misfit marriage of a couple too young to possess sufficiently mature judgment or the moral stamina to tolerate the confines of *234 matrimony or tó adhere to necessary reciprocal responsibilities.
Defendant was in the military service, stationed at Camp Polk, Louisiana, in May, 1957, when plaintiff went over there. The record is not clear as to how long the parties had known each other, if at all, at that time. Plaintiff was fifteen years of age and defendant was only a little older when they married at Leesville, Louisiana, near Camp Polk on July 13, 1957. Very soon defendant was transferred to military duty in Detroit, Michigan, and plaintiff came to live with her parents in New Orleans. In October, 1957, plaintiff went to Detroit to visit her husband. She was in an advanced state of pregnancy and in addition she was otherwise in poor health. Because of her physical condition, plaintiff’s mother accompanied her and remained in Detroit only a few weeks. Plaintiff’s mother testified that there was considerable argument and discord between her daughter and defendant at that time. After a month or two, plaintiff returned to New Orleans and her first child was born in January, 1958. During the three years of army service, plaintiff and defendant lived together only about two months. Upon defendant’s discharge they lived with plaintiff’s parents in New Orleans.
When defendant first got out of the service he was sick. After he got well it was several months before he obtained employment. Up to the trial of this case defendant worked intermittently and for short periods of time at various jobs, with spaces of unemployment in between. Their troubles were frequent and some times violent. They separated a time or two but each time they became reconciled. On one of these occasions defendant filed suit for separation against the plaintiff, but they went back together and that suit was withdrawn. Of course, under the law their reconciliation and resumption of marital relations constituted a condonement of their previous vexatious action toward each other, 'but only temporarily. They lived at various places and finally, because of defendant’s failure to provide a livelihood, they moved back into the home of plaintiff’s parents. On one occasion while living there defendant became enraged at plaintiff in the living room, threw her to the floor and punched her with his knees while she was down. On another occasion while plaintiff was lying on the bed watching TV, defendant came in and demanded that she move to permit him to lie down. Plaintiff did not move and he pulled her by the feet in an attempt to drag her off the bed. Plaintiff held to the head of the bed and defendant dragged the bed by pulling plaintiff’s legs and at the same time twisting her body. Attracted by plaintiff’s screams, plaintiff’s mother came into the room and endeavored to get defendant to release his wife. When he continued to pull and twist plaintiff, Mrs. Dixon, plaintiff’s mother, slapped his face hard and he released his wife.
In one of the times whep there was no money for groceries and bills, plaintiff secured a job at the Roosevelt Hotel Blue Room as a photographer. She worked at night from about 6:30 p. m. to 3 :00 o’clock a. m. At times, when she would get off from work in the early morning hours some of the employees would give her a ride to her home in their automobile. Most of these times it was another lady photographer who would give plaintiff a ride. Sometimes they would stop at a restaurant to get something to eat before going home. Frequently, plaintiff detected that defendant would follow them in his car and on one of these occasions defendant got out of his car at the restaurant where plaintiff and her female companion had stopped and engaged plaintiff in an altercation in which he shoved her against the wall and plaintiff says defendant cursed her loudly at that time in the presence of bystanders. Defendant charges that plaintiff did a lot of cursing and foul talking on this and other occasions, but the fact is that defendant precipitated the quarrel and committed the battery upon her for no sufficient provocation.
*235 After living mostly at the home of plaintiff’s parents (Mrs. Dixon, plaintiff’s mother, did not say that she put them out, but she did say that she got very tired furnishing them and paying defendant’s bills), plaintiff and defendant lived short stretches at various places and finally in the latter part of August, 1961, they moved into a small home on Republic Street. It required only a few days for conditions to reach a climax. It is understandable that plaintiff’s night work and getting home in the early morning hours did not contribute any happiness in the family life, but plaintiff contends that she had to work because defendant would give her no money whatever with which to buy groceries and he didn’t provide things to eat with any regularity or in sufficient quantity. Anyhow, that was a job and so far as the evidence shows it was proper, legitimate employment. There is no testimony that plaintiff was guilty of acts of serious misbehavior. There is some suggestion in the testimony that defendant kept company with another girl and actually told his wife he wanted a divorce so he could marry the other girl.
Soon after they moved to the Republic Street home, defendant moved the children to his mother’s home, where plaintiff had considerable difficulty seeing them. In early September on several nights when plaintiff would come home as usual she found that defendant was not there. Knowing that she could not sleep at the home alone she went to her mother’s home to sleep. About September 12, during the day, she went to the Republic Street home but could not get in. She broke a window, with the permission of the landlord’s agent, and went in through the window and found that defendant had nailed the windows shut and the doors were barricaded with two by fours nailed across them on the inside. On September 25, 1961, plaintiff went to the home of defendant’s mother to see her children. Defendant and his several brothers were there. Their smaller child ran to plaintiff’s mother and she picked it up in front of the house. Defendant and his younger brother forcibly took the child away from its grandmother. When plaintiff went to assist her mother in the scuffle,, defendant instructed another brother to hold plaintiff, which he did by pinning her arms-behind her. In the meantime the larger' child, three years old, by some means, got in or was placed in the automobile of plaintiff’s mother. Defendant took possession of the keys of the car, obtained a hammer and demanded that the child be let out of the car. About that time the defendant instructed one of his brothers to bring a gun, which he did. Plaintiff and her mother said they were fearful of their own safety and that of the child so they opened the door and the child got out. The defendant returned the keys and plaintiff and her mother drove away. Defendant admitted that what happened on that occasion was substantially related correctly by plaintiff and her mother, except he denied positively that he ordered the gun brought or that he had a hammer in his hand. It is apparent that defendant assumed that the plaintiff and her mother had come to take the children away. Even if they had come there for that purpose there would have been nothing unlawful for plaintiff to have taken the children.
There are any number of other more or less minor instances, but further discussion is unnecessary. Defendant denies many of the instances described by plaintiff, but admits enough to enable the Court to be assured that the instances did take place. Most of plaintiff’s evidence is amply supported and corroborated by witnesses not related to either party.
The judgment appealed from is affirmed in all respects.
Affirmed.